## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SIDNEY LEBENTAL

                Plaintiff,

v.

FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.,

                Defendant.

Civil Action No.

JURY TRIAL DEMANDED

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiff Sidney Lebental ("Plaintiff"), by and through his undersigned counsel, brings this action against the Financial Industry Regulatory Authority, Inc. ("FINRA") and alleges as follows:

### INTRODUCTION

1.    Plaintiff brings this action seeking a declaratory judgment that FINRA's enforcement procedures, in-house tribunal construct and deliberation structure are unconstitutional and to enjoin FINRA's Department of Enforcement ("DOE") from pursuing its unconstitutional enforcement action against Plaintiff.

2.    On May 23, 2023, the DOE filed a complaint against Plaintiff, asserting causes of action under the federal securities laws, as well as FINRA Rules, stemming from certain trades Plaintiff executed from October 2014 through February 2021 while affiliated with his prior employer, a FINRA member firm (the "Complaint").

3.    In the Complaint, the DOE requests that FINRA's Office of Hearing Officers impose sanctions on Plaintiff that could include censure, monetary penalties and expulsion from the industry.  In other words, Plaintiff faces the potential for permanent loss of his ability to

associate with a FINRA member firm, and thus the potential loss of his personal liberty and property rights, through the adjudication of the DOE's claims in an unconstitutional process overseen by an unconstitutionally appointed Hearing Officer.

4.      While purporting to be a private entity unconstrained by the limits of the Constitution, the DOE in fact wields significant executive power when it enforces the federal securities laws and associated FINRA rules against its member firms and associated individuals.

5.      The DOE does not enjoy any discretion in determining whether to exercise its enforcement authority for violations of the federal securities laws.  To the contrary, federal law requires that the DOE enforce the provisions of the Securities and Exchange Act of 1934 (the "Exchange Act") and provides the Securities and Exchange Commission ("SEC") with the power to rescind FINRA's registration and/or remove any of its officers or directors if the SEC determines that either FINRA or any individual officer or director has failed to enforce the securities laws.

6.      This government-mandated obligation that the DOE enforce federal law against its members and associated individuals constitutes the exact type of governmental compulsion that the Supreme Court, as well as the D.C. Circuit, have held constitutes state action.  Accordingly, when the DOE exercises its enforcement authority under the federal securities laws and associated FINRA rules against its members and associated individuals through the commencement of enforcement proceedings, it qualifies as a state actor that is subject to the constraints of the U.S. Constitution.

7.      Indeed, as Judge Walker of the United States Court of Appeals for the District of Columbia Circuit recently explained, "[t]hough FINRA is private, its enforcement activities are controlled by the government."  Alpine Sec. Corp. v. FINRA, No. 23-5129, 2023 WL 4703307, at

*3 (D.C. Cir. July 5, 2023) (Walker, J., concurring), en banc reconsideration denied (Aug. 22, 2023).

8.    Thus, because FINRA's "enforcement activities are controlled by the government," it is required to exercise that enforcement authority in a manner consistent with the limits of the Constitution.

9.    FINRA's enforcement structure and process, however, far exceed such Constitutional limitations.

10.    In particular, the DOE's enforcement actions alleging violations of the federal securities laws and associated FINRA rules are heard and decided by unconstitutionally appointed Hearing Officers.  Like the Administrative Law Judges ("ALJs") within the SEC who the Supreme Court has ruled are Officers of the United States, and whose appointment must therefore be made in accordance with the Appointments Clause, Lucia v. SEC, 138 S. Ct. 2044, 2049 (2018), so too must the appointment of FINRA's Hearing Officers, who are "near carbon copies of those ALJs." Alpine, 2023 WL 4703307, at *2 (Walker, J., concurring).

11.    As with SEC ALJs, FINRA Hearing Officers are tasked by federal law with enforcing the nation's securities laws and deciding parties' rights.  Id.  In so doing, they have the authority to levy significant sanctions—including orders of expulsion extinguishing an individual's career in the securities industry—that carry the force of federal law.  Indeed, not only can Hearing Officers impose such sanctions, but federal law requires that FINRA Hearing Officers "appropriately discipline[]" members and associated individuals for violating federal securities laws by such measures as expulsion, suspension, the levying of a fine "or any other fitting sanction."  15 U.S.C. § 78o-3(b)(7).

12.     And like SEC ALJs, FINRA Hearing Officers can order testimony, rule on motions, regulate the speed and course of a hearing, decide the admissibility of evidence and enforce compliance with discovery orders by punishing contempt.  See FINRA Rules 8210, 9252, 9235, 9263, 9280.

13.     In other words, if SEC ALJs are executive officers subject to the Appointments Clause, then so too are FINRA Hearing Officers who, "[f]rom start to finish, execute government laws subject to a government plan, with little to no room for private control."  Alpine, 2023 WL 4703307, at *3 (Walker, J., concurring).

14.     Yet, notwithstanding their exercise of "significant executive power," Lucia, 138 S. Ct. at 2051 (Breyer, J., concurring in part), FINRA Hearing Officers are appointed by FINRA's CEO, and not by a government body, as required by the Appointments Clause.  In addition, FINRA's Hearing Officers and members of its Board of Governors ("the Board" or "FINRA's Board") may not be removed by the SEC except for cause.  See 15 U.S.C. § 78s(h)(4).  And since the President may not remove SEC Commissioners at will, see Jarkesy v. SEC, 34 F.4th 446, 464 (5th Cir. 2022), FINRA Hearing Officers and Board members enjoy two layers of removal protection—one for themselves and one for the Commissioners.  This two-layered protection from removal impairs the President's ability to execute the laws by holding his or her subordinates accountable for their conduct, and thus violates the separation of powers doctrine embedded in Article II of the Constitution.

15.     In addition to the unconstitutional appointment of FINRA Hearing Officers and the removal protections enjoyed by the Hearing Officers and FINRA Board members, FINRA's use of in-house tribunals to prosecute alleged violations of the federal securities laws and associated FINRA rules violates a variety of Plaintiff's individual constitutional rights, including: his right to

a jury trial under the Seventh Amendment; his right against self-incrimination under the Fifth Amendment; and his right not to be "deprived of life, liberty, or property, without due process of law" under the Fifth Amendment.

16.     While in every respect, the DOE functions as an agent of the executive branch in connection with its enforcement authority—mandated by Congress to enforce the nation's securities laws with the authority to impart draconian and industry-barring sanctions against individuals—it nevertheless purports to act as a private entity unrestrained by the restrictions of the Constitution.

17.     Plaintiff, caught in the crosshairs of the DOE's enforcement authority, is thus subject to a process that deprives him of his basic constitutional protections in front of an unconstitutional in-house tribunal overseen by an unconstitutionally appointed Hearing Officer.

18.     In the face of this unconstitutional process and the threat of censure, monetary fines, and a permanent bar from association with any broker-dealer, Plaintiff brings this action to enjoin the DOE's enforcement proceeding and thus halt the ongoing violation of Plaintiff's constitutional rights.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims concerning FINRA's authority under the Securities Exchange Act of 1934, 15 U.S.C. Ch. 2b, and Plaintiff's constitutional challenges to the DOE's enforcement authority present federal questions.

20.     This Court has personal jurisdiction over FINRA because its principal place of business is in the District of Columbia.

21.     Venue in this District is proper pursuant to 28 U.S.C. § 1391(b) because FINRA resides in this District.

## PARTIES

22.    Plaintiff Lebental is a resident of Florida.

23.    Plaintiff was registered with FINRA through his association with a FINRA member firm from July 2008 through May 25, 2021.

24.    Defendant FINRA is a registered national securities association that is tasked by the federal government with enforcing the Exchange Act and the rules and regulations promulgated thereunder, as well as its own rules, which must be approved by the SEC.

25.    FINRA is incorporated in Delaware with its principal place of business in the District of Columbia.

26.    Plaintiff has standing to assert his claims herein because Plaintiff was previously a regulated party; Plaintiff wishes to retain his ability to associate with a FINRA member firm; Plaintiff is a respondent in a FINRA enforcement action and currently is experiencing the direct impact of the DOE's unconstitutional exercise of its enforcement authority; and Plaintiff has suffered and will continue to suffer irreparable injury if he is required to defend himself in an unconstitutional enforcement proceeding.

27.    Plaintiff's claims challenge the constitutionality of the DOE's exercise of its enforcement authority.  As such, preclusion of the Court's subject-matter jurisdiction over this action would foreclose all meaningful review of Plaintiff's claims because being subjected to an unconstitutionally structured administrative enforcement process "is 'a here-and-now injury' . . . [that] is impossible to remedy once the [FINRA] proceeding is over."  Axon Enter., Inc. v. Fed. Trade Comm'n, 598 U.S. 175, 191 (2023).

28.    Further, Plaintiff's claims are wholly collateral to the statutory review provisions associated with FINRA because Plaintiff's claims are unrelated to the enforcement-related matters that FINRA and the SEC regularly adjudicate.

29.    Moreover, Plaintiff's claims are outside FINRA's and the SEC's expertise because Plaintiff's claims involve structural constitutional challenges that are detached from considerations of agency policy, as well as the federal securities laws.

## FACTUAL BACKGROUND

### A.    FINRA's Structure and Operations

30.    FINRA was formed in 2007 when its predecessor, the National Association of Securities Dealers ("NASD"), consolidated its member-firm regulation and enforcement functions with the regulatory enforcement functions of the New York Stock Exchange ("NYSE").  FINRA is the only association of broker-dealers registered as a "national securities association" under Section 15A of the Exchange Act.

31.    FINRA is run by its Board of Governors, which is responsible for overseeing the management and administration of FINRA's operations and affairs.

32.    The Board currently consists of 22 individuals.  FINRA's by-laws require the Board to be comprised of FINRA's Chief Executive Officer ("CEO") and a certain number of "industry governors," who operate within the broker-dealer industry, and "public governors," who have no material business relationship with a broker or dealer registered under the Exchange Act.  Despite its status as a *self*-regulated organization ("SRO"), FINRA's by-laws further require that there be more public governors than industry governors on the Board.  Currently, there are 11 public governors and 10 industry governors on the Board.

33.    By virtue of its statutory authority, FINRA (and its predecessor NASD) wears two institutional hats:  *First*, it serves as a professional association, promoting the interests of its members.  *Second*, it serves as a quasi-governmental agency, with an express statutory mandate to enforce the federal securities laws and to sanction those of its members and associated individuals who it alleges to have violated those laws.

34.     Enforcement actions brought by the DOE against FINRA members and/or associated individuals for violations of the federal securities laws and associated FINRA rules are filed with FINRA's Office of Hearing Officers.

35.     The DOE's filing of a complaint with the Office of Hearing Officers commences an enforcement proceeding.   Enforcement proceedings are governed by FINRA's Code of Procedure, which must be ratified by the SEC.  *See* 15 U.S.C. 78s(b)(1).

36.     FINRA's Office of Hearing Officers consists of nine Hearing Officers who are appointed by FINRA's CEO and who preside over enforcement proceedings brought by the DOE.

37.     After the filing of a complaint by the DOE, the Chief Hearing Officer appoints a three-person panel to hear the case.  FINRA Rule 9231(a).  The panel is chaired by one of FINRA's nine Hearing Officers, who is a full-time FINRA employee.  FINRA Rule 9231(b).

38.     From commencement of the enforcement action through the eventual hearing, FINRA's Hearing Officers preside over the adversarial proceeding and, together with the panel, ultimately render a written decision, which may include the imposition of sanctions, including a permanent industry bar.  The decision of the Hearing Panel is final unless a party timely appeals the Hearing Panel decision to FINRA's National Adjudicatory Council ("NAC"), which is appointed by the Board of Governors.

39.     In overseeing DOE enforcement proceedings, FINRA Hearing Officers are granted the "authority to do all things necessary and appropriate to discharge his or her duties."  FINRA Rule 9235.  Such authority includes the power to demand testimony; hold pre-hearing and other conferences; resolve any and all procedural and evidentiary matters, discovery requests and other non-dispositive motions, as well as motions for summary disposition in conjunction with the Hearing Panel; regulate the course of the hearing; decide the admissibility of evidence; and enforce

compliance with discovery orders by punishing contempt.  *See* FINRA Rules 9235, 9263(a), and 9280.

40.    In FINRA's own words, the Office of Hearing Officers "serves as FINRA's 'courthouse.'"    *Office of Hearing Officers*, FINRA, https://www.finra.org/rules-guidance/adjudication-decisions/office-hearing-officers-oho/about (last accessed Oct. 4, 2023).  In that respect, and as outlined in the preceding paragraphs, FINRA's Hearing Officers possess power and exercise significant executive authority and discretion akin to that of federal district court judges and SEC ALJs, and beyond that of mere government employees or functionaries.

**B.    FINRA has Evolved from a Self-Regulatory Organization to an Agent of the Federal Government**

41.    In connection with its government-issued mandate to enforce the federal securities laws, FINRA operates as an SRO in name only.  It is governed by a majority of non-members of the securities industry, exercises extensive governmental authority, and operates essentially as an enforcement agent of the SEC.

42.    Over the years, FINRA (including its predecessor SROs) has evolved from a private sector, industry-led organization into a government-controlled securities regulator that functions without adhering to constitutional restrictions.  Although FINRA only recently came into existence in 2007, its historical roots trace back to the long-standing self-regulatory convention of the securities industry, through which industry participants worked together to create and enforce standards of conduct.  The New York Stock Exchange ("NYSE") was formed as far back as the 1800s and serves as the earliest example of industry self-regulation.  Among other things, SROs have overseen the day-to-day operations of securities exchanges, enacted and enforced rules intended to protect investors, and disciplined their own members who violated those rules.

43.     Partly due to widespread reports of securities fraud and manipulative trading that occurred in and around the stock market crash of 1929, Congress enacted sweeping legislation to provide significant governmental regulation of the securities industry.  Through the enactment of the Exchange Act in 1934, Congress created the SEC to serve as the governmental regulator of the securities market.  The Exchange Act empowered the SEC to write and enforce securities rules and to oversee the SROs in the continued performance of their self-regulatory functions.  Through this construct, the SEC and SROs were meant to provide a balanced and complementary collection of industry and governmental oversight, rulemaking, and enforcement mechanisms.

44.     Congress amended the Exchange Act in 1938 through the passage of the Maloney Act, which added a provision to allow for associations of brokers or dealers that satisfied certain statutory requirements to register voluntarily with the SEC as national securities associations.  The Maloney Act provided further groundwork for a shared regulatory relationship between the SEC and the securities industry.  According to the SEC, the Maloney Act created "the principle of conferring upon regulatory groups from business a primary responsibility for enforcing high standards of business conduct upon their members . . . [by organizing] a system of regulation in the over-the-counter markets through the formation of voluntary associations of investment bankers, dealers and brokers doing business in these markets under appropriate supervision." *SEC, Fourth Annual Report of the Securities and Exchange Commission:  Fiscal Year Ended* June 30, 1938 (Washington, DC: SEC, 1938), at 33.

45.     Almost immediately after passage of the Maloney Act, the SEC approved the NASD as the first—and only—registered national securities association.  And as one of its early acts, the NASD began requiring principal and customer-facing employees of broker-dealers to register with the NASD.

46.     Congress further amended the Exchange Act in 1975 to require SEC approval for NASD rules.  Through this amendment, Congress significantly broadened and increased the SEC's authority over the NASD.

47.     Shortly thereafter, in 1983, Congress strengthened the regulatory power of the NASD even further by requiring every broker-dealer to register with the NASD.

48.     In the mid-1990s, the SEC's faith in the ability of the NASD to self-regulate its members began to erode.  The SEC censured the NASD for not enforcing its rules against NASDAQ market makers who had engaged in price manipulation and other anticompetitive practices.  *See* Barbara Black, "Punishing Bad Brokers: Self-Regulation and FINRA Sanctions," *Brooklyn Journal of Corporate, Financial, and Commercial Law* 8, no. 1 (2013): 36.  As part of the 1996 settlement of that matter, the SEC required the NASD to implement fundamental changes to its governance—including increasing the role of non-industry members on the NASD board and chairing its disciplinary hearings with professional staff.  *Id.*  Specifically, the settlement required that FINRA's Board of Governors include "at least 50% independent public and non-industry membership."  *Id.*  One industry commentator described the settlement as a significant turning point in "the NASD's transformation into a professional regulator largely independent of its membership."  *Id.*

49.     Due in part to concerns about regulatory redundancies and inefficiencies caused by multiple SROs, in 2007, the SEC approved the merger of the member regulation functions of the NASD and NYSE Regulation.  Through this consolidation, FINRA was created.  With its monopoly status, FINRA is now the sole regulator of all broker-dealers and regulates 3,378 brokerage firms, 150,647 branch offices and 620,882 registered securities representatives.  The SEC again required fundamental changes to FINRA's structure as a condition to the SEC's

approval of the merger.  *See* SEC Release No. 2007-151 (Jul. 26, 2007).  These changes—including the increase of public representation on the Board—were further aimed at eroding member influence.  *See* Birdthistle & Henderson, *Becoming a Fifth Branch*, 99 CORNELL L. REV. 1, 23 (2013).  Indeed, since 2007, FINRA's by-laws have required that public governors (i.e., non-securities industry professionals) comprise a *majority* of FINRA's Board of Governors. FINRA, *By-Laws of the Corporation*, Article VII, § 4(a).

50.     As shown above, FINRA (including its predecessors) has gradually but inexorably moved away from the original SRO mission of serving as a voluntary membership association of industry participants providing self-regulation of industry norms.  Today, FINRA operates independently from the securities industry and as a front-line agent of the SEC in connection with its authority under the federal securities laws.

51.     Congress has empowered and, in fact, requires FINRA to enforce the federal and other securities laws.  Pursuant to the Exchange Act, and as explained in more detail *infra,* FINRA must enact rules that provide for the imposition of sanctions on its members and associated individuals for violations of its rules and the federal securities laws.  15 U.S.C S 78o-3(b)(7). FINRA must also "enforce compliance [with the Exchange Act] by its members and persons associated with its members."  15 U.S.C. S 78s(g).  Pursuant to this federal legislative directive, FINRA has enacted those rules, which provide for the use of an in-house tribunal process presided over by an unconstitutionally appointed Hearing Officer tasked with deciding DOE enforcement actions alleging violations of the federal securities laws and related FINRA rules.

52.     Moreover, FINRA acts under the supervision and control of the SEC, which—pursuant to various amendments to the Exchange Act—now wields substantial authority over FINRA's activities.  Among other things, the SEC has the authority to modify or rescind FINRA

rules and to approve or disapprove of new rules proposed by FINRA. *See* 15 U.S.C. §§ 78s(b)(1), (c). In addition, the SEC has the power to review FINRA enforcement actions and can affirm, remand or revise the sanctions imposed by FINRA Hearing Officers. *See id.* §§ 78s(d)(2), (e).

53.    In short, FINRA has morphed into a powerful arm of the executive branch in connection with its enforcement of the federal securities laws and associated FINRA rules against its member firms and associated individuals. Notwithstanding this role as an agent of the federal government, FINRA continues to purport to be a private actor and, accordingly, enforces federal laws without adhering to the restrictions on individual rights afforded by the Constitution.

**C.    The DOE Qualifies as a State Actor When it Acts in Furtherance of its Government Mandate to Enforce the Federal Securities Laws**

54.    While purporting to act as a private enterprise, in reality and in practice, FINRA serves as an extension of the federal government that is not only authorized and able to enforce the federal securities laws, but also required to do so under federal law. *See Alpine*, 2023 WL 4703307, at *3 (Walker, J., concurring) ("Though FINRA is private, its enforcement activities are controlled by the government. The Securities Exchange Act requires FINRA to enforce government standards, including statutory provisions and SEC regulations.").

55.    This mandate to enforce federal law is consistent with the legislative history of the 1975 amendments to the Exchange Act, which "underscored that [SROs such as FINRA] are intended to be subject to the SEC's control and have no governmentally derived authority to act independently of SEC oversight." H.R.Rep. No. 123, 94th Cong., 1st Sess., 48-49 (1975).

56.    Specifically, the Exchange Act provides that FINRA "shall . . . enforce compliance" with the Exchange Act and the rules and regulations promulgated thereunder. 15 U.S.C. § 78s(g)(1)(B). That language constitutes a governmentally-mandated obligation that FINRA enforce the federal securities laws through the commencement of enforcement actions.

57.    Indeed, in order to maintain its registration with the SEC as a national securities association, FINRA must maintain rules providing that its members and associated individuals "*shall* be appropriately disciplined for violation of any provision of [the Exchange Act]" by means of "expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction."  15 U.S.C. § 78o-3(b)(7) (emphasis added).  And FINRA's rules governing its investigations and enforcement proceedings—as with all of FINRA's rules—must also be approved by the SEC, which has the authority to modify them at any time.  15 U.S.C. §§ 78s(b)(1), (c).  Indeed, even FINRA's code of procedure is approved by the SEC.  *See Regulatory Notice 08-57*, FINRA (2008), https://www.finra.org/rules-guidance/notices/08-57 (FINRA announces SEC approval of its code of procedure, among other things).

58.    The Exchange Act thus explicitly requires FINRA to enforce compliance with the federal securities laws and, in furtherance of that obligation, to establish and maintain rules—as approved by the SEC—mandating the discipline of its members and associated individuals for violations of those laws.

59.    And, FINRA has done exactly that:   FINRA Rule 9211 provides for the commencement of enforcement proceedings against its members or associated individuals for violations of "any rule, regulation, or statutory provision, including the federal securities laws and the regulations thereunder, which FINRA has jurisdiction to enforce."  Moreover, FINRA Rule 8310 provides a list of sanctions that FINRA may impose on its members and associated individuals for violations of the federal securities laws, which echo the sanctions available to national securities associations that are laid out in the Exchange Act.  *See also* FINRA, *Sanctions Guidelines* (Washington DC; FINRA, 2013), 9–11.

60.     Not only is FINRA required by the Exchange Act to enforce the federal securities laws, but it enjoys no prosecutorial discretion in determining which enforcement actions to bring. Indeed, the Exchange Act grants the SEC the authority to suspend or revoke FINRA's registration as a national securities association if the SEC determines that FINRA has "failed to enforce compliance" with any provision of the Exchange Act or the rules or regulations thereunder.  15 U.S.C. § 78s(h)(1)(B).  The Act further authorizes the SEC to remove FINRA's directors and officers if they fail to enforce the federal securities laws.  *Id.* § 78s(h)(4); *see also id.* § 78o-3(b)(7).

61.     In connection with FINRA's exercise of its "quasi-governmental powers" to enforce the federal securities laws and associated FINRA rules, FINRA—like the government—enjoys absolute immunity from suit "when conducting disciplinary proceedings." *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998).  Courts have consistently held that FINRA and its predecessors are "absolutely immune from damages claims arising out of the performance of [their] federally-mandated conduct of disciplinary proceedings." *Barbara v. NYSE*, 99 F.3d 49, 58 (2d Cir. 1996); *see also In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008).  As explained by the Second Circuit, the granting of immunity to FINRA for claims arising in the context of FINRA's performance of its "quasi-public adjudicatory and prosecutorial duties" is appropriate because in "perform[ing] [the] important governmental function[]" of enforcing the federal securities laws, FINRA performs a regulatory function "that would, in other circumstances, be performed by a government agency . . . [that] would be entitled to sovereign immunity from all suits for money damages." *Barbara*, 99 F.3d at 58-59.

62.     As Justice Walker of the D.C. Circuit recently stated, "[f]rom start to finish, FINRA hearing officers execute government laws subject to a government plan, with little to no room for private control." *See Alpine*, 2023 WL 4703307, at *3 (Walker, J., concurring).  The government-

issued mandate that FINRA enforce the provisions of the Exchange Act against its members and associated individuals pursuant to "a government plan, with little to no room for private control" amounts to the exact type of government compulsion of a private entity that the Supreme Court has held constitutes state action that is subject to the requirements of the Constitution. *See Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019) ("a private entity can qualify as a state actor . . . when the government compels the private entity to take a particular action").

## FINRA'S STRUCTURE AND PROCESS VIOLATE THE CONSTITUTION

### A.    The Appointment of FINRA's Hearing Officers Violates the Appointments Clause

63.    As described in the preceding paragraphs, FINRA is required by federal law to enforce the federal securities laws and, accordingly, FINRA qualifies as a state actor when it acts in furtherance of that government mandate. As a state actor, FINRA is bound to comply with the restrictions of the Constitution when enforcing the federal securities laws and associated FINRA rules, including the requirement that the appointment of its Hearing Officers complies with the Appointments Clause of Article II.

64.    FINRA Hearing Officers, who—like SEC ALJs—"exercise[] significant authority pursuant to the laws of the United States" by "enforc[ing] the nation's securities laws," *Lucia*, 138 S. Ct. at 2049, 2051 (cleaned up), are "Officers of the United States" who must be appointed in compliance with the Appointments Clause.

65.    Although employed by a different arm of the executive branch, FINRA Hearing Officers are "near-carbon copies" of SEC ALJs. *Alpine*, 2023 WL 4703307, at *2 (Walker, J., concurring). Both FINRA Hearing Officers and SEC ALJs "have all the authority needed to ensure fair and orderly adversarial hearings—indeed, nearly all the tools of federal trial judges." *Lucia*,

138 S. Ct. at 2049, 2051.  This authority includes the power to:  i) hold pre-hearing and other conferences; ii) regulate the course of the hearing; iii) order oral arguments; iv) resolve "any and all" procedural and evidentiary matters; v) reopen any hearing prior to issuance of a decision; vi) maintain the official record; vii) draft a decision; and viii) rule on motions.  FINRA Rule 9235. As this list suggests, FINRA Hearing Officers exercise the same "significant discretion" when carrying out the same "important functions" as SEC ALJs.  *Id.*

66.     FINRA hearing panels (consisting of the Hearing Officer and two panelists) issue decisions on alleged violations of the federal securities laws and associated FINRA rules, as determined by majority vote of the panel—none of whom are appointed by the President, a court of law or a head of a government department—containing factual findings, legal conclusions and appropriate sanctions.  *See* Rule 9268(b).  These decisions—like those rendered by SEC ALJs— can become final and effective without any further consideration or review.  *See* FINRA Rule 9268(e).

67.     While the SEC can review FINRA hearing panel decisions "on its own motion, or upon application by any person aggrieved . . . filed within thirty days," 15 U.S.C. § 78s(d)(2), this is also true of SEC ALJs, whose decisions can be reviewed by the SEC either upon request or *sua sponte*.  15 U.S.C. § 201.360(d)(1).

68.     Point for point, FINRA Hearing Officers "have equivalent duties and powers" as SEC ALJs in conducting adversarial proceedings concerning alleged violations of the federal securities laws.  *See Lucia*, 138 S. Ct. at 2053.

69.     Accordingly, if SEC ALJs qualify as Officers of the United States, so too must FINRA Hearing Officers, who exercise the same significant executive power as the ALJs.

70.     The Appointments Clause lays out the exclusive means of appointing "Officers of the United States," a class of government officials—like SEC ALJs and FINRA Hearing Officers—distinct from mere employees.  Only the President, a court of law, or a head of department can do so.  *See* U.S. Const. art. II, § 2, cl. 2.

71.     FINRA Hearing Officers are appointed by FINRA's CEO, and they are assigned to various FINRA enforcement proceedings—including Plaintiff's—by FINRA's Office of Hearing Officers.

72.     Accordingly, as FINRA Hearing Officers are Officers of the United States, their appointment by FINRA's CEO is a violation of the Appointments Clause.

**B.     FINRA's Enforcement Structure Violates the Separation of Powers Doctrine**

73.     As described in the preceding paragraphs, FINRA operates as a state actor subject to the constraints of the Constitution in connection with its enforcement of the federal securities laws and associated FINRA rules against its members and associated individuals.  Accordingly, FINRA's enforcement and adjudicatory structure must comply with the principles of separation of powers embedded in Article II of the Constitution.

74.     The Constitution provides that "[t]he executive Power shall be vested in a President of the United States," and the President "shall take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3.

75.     Given the impossibility that one man or woman "should be able to perform all the great business of the State," however, the Constitution provides for executive officers to assist the President in carrying out his or her duties.

76.     Since 1789, the Constitution has been understood to empower the President to keep these officers accountable by removing them from office if necessary.  For the President to take care that the laws are faithfully executed, it is imperative that the President has some power of

removing those for whom he or she "cannot continue to be responsible." *Myers v. United States*, 272 U.S. 52, 117 (1926).

77.    This power is not without limit, however.  The Supreme Court has held that Congress can, under certain circumstances, create independent agencies run by principal officers appointed by the President, whom the President may only remove for good cause.  *See Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2192 (2020).  Likewise, the Court has sustained similar restrictions on the power of principal officers—themselves responsible to the President—to remove their own inferior officers.  *See Morrison v. Olson*, 487 U.S. 654 (1988); *United States v. Perkins*, 116 U.S. 483 (1886).

78.    The Supreme Court has ruled, however, that these separate layers of protection may not be combined; that is, the President may not be restricted in his or her ability to remove a principal officer who is in turn restricted in his or her ability to remove an inferior officer.  *See Free Enterprise Fund v.  Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 483–84 (2010).

79.    Such multilevel protection from removal, which impedes the President's obligation to oversee the faithfulness of the officers who execute the laws, is contrary to Article II's vesting of the executive power in the President.

80.    Although FINRA operates under the supervision and control of the SEC, FINRA's Hearing Officers and Board members may be removed by the SEC only upon a finding—after notice and the opportunity to be heard—that the Hearing Officer or Board member willfully violated any provision of the Exchange Act, the rules or regulations thereunder or any of FINRA's rules; willfully abused his or her authority; or failed to enforce compliance with the Exchange Act. *See* 15 U.S.C. § 78s(h)(4); *see also Free Enterprise Fund*, 561 U.S. at 487.

81.    And the SEC Commissioners, in turn, cannot themselves be removed by the President at will; rather, they are removable only for "inefficiency, neglect of duty or malfeasance in office."  *Humphrey's Executor v. United States*, 295 U.S. 602, 620 (1935).

82.    This dual for-cause limitation on the removal of FINRA Hearing Officers and Board members—one for the Commissioners and one for the Hearing Officers/Board members—strips the President of the power to hold his or her subordinates accountable for their conduct, and thus contravenes the Constitution's separation of powers doctrine.

83.    Without the ability to oversee FINRA's Board and/or its Hearing Officers, or to attribute their failings to those whom the President *can* oversee, the President is no longer the judge of the Board's or the Hearing Officers' conduct.  This violates the basic principle that the President "cannot delegate ultimate responsibility or the active obligation to supervise that goes with it because Article II makes a single President responsible for the actions of the Executive Branch." *Free Enterprise Fund*, 561 U.S. at 497-98 (cleaned up).

### C.    The DOE's In-House Enforcement Proceeding Violates Plaintiff's Seventh Amendment Right to a Trial by Jury

84.    FINRA has substantial power to enforce the federal securities laws and associated FINRA rules.  In so doing, it acts as the adversary, judge, and jury, and its decisions have broad consequences for critical professional licenses, personal reputations, and individuals' liberty and property rights.

85.    Yet, notwithstanding the severe implications for individuals' rights, Plaintiff and other similarly-situated individuals are forced to defend DOE-initiated federal securities charges before an in-house tribunal—presided over and controlled by an employee of FINRA, the adversary in the case—rather than before a jury of their peers.

86.    Consequently, instead of receiving the impartial adjudication that the Constitution demands, FINRA members and associated individuals are subjected to an unfair proceeding controlled and ultimately determined by an employee of their adversary in the action.

87.    This structure is inherently biased and fundamentally unfair—and it violates Plaintiff's Seventh Amendment right to a trial by jury.

88.    As long recognized, trial by jury is a fundamental component of this country's legal system "and remains one of our most vital barriers to governmental arbitrariness." *Reid v. Covert*, 345 U.S. 1, 9–10 (1957).

89.    The Seventh Amendment protects the right to a jury trial for "[s]uits at common law," which has been interpreted by the Supreme Court to include all actions akin to those brought at common law as those actions were understood at the time of the adoption of the Seventh Amendment. *See Tull v. United States*, 481 U.S. 412, 417–19 (1987).

90.    The DOE brings claims against Plaintiff for securities fraud under the Exchange Act and the Securities Act of 1933.  Fraud prosecutions were regularly brought in English courts at common law at the time of the ratification of the Bill of Rights.  Therefore, the rights that the DOE seeks to vindicate in its enforcement proceeding against Plaintiff clearly arise at common law under the Seventh Amendment.  And, as securities fraud actions are known to common law, they are not the sort of cases that are uniquely suited for agency adjudication; to the contrary, common-law courts have been hearing fraud actions for centuries.

91.    Even more pointedly, the Supreme Court has held that actions seeking civil penalties—as FINRA's action does here—are akin to special types of actions in debt from early in our nation's history that were distinctly legal claims that could only be enforced in courts of law. *See Tull*, 481 U.S. at 418–19.

92.    Accordingly, Plaintiff has the constitutional right for a jury to adjudicate the facts underlying any potential fraud liability that justifies the imposition of penalties or injunctive remedies.

93.    FINRA's in-house adjudicative structure for the determination of Plaintiff's liability with respect to securities fraud charges under the federal securities laws and associated FINRA rules violates his fundamental right to a jury trial enshrined in the Seventh Amendment.

**D.    The DOE's Enforcement Proceeding Violates Plaintiff's Fifth Amendment Right Against Self-Incrimination**

94.    The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."

95.    Because FINRA does not consider itself to be a state actor subject to the restraints of the Constitution, it "does not recognize the Fifth Amendment privilege against self-incrimination in any of its proceedings, including an [On-the-Record Interview]." *Dep't of Mkt. Regul. v. Lubetsky*, No. FPI140011, at 3 (Mar. 12, 2015).  And if a respondent in a FINRA enforcement action "refuse[s] to answer any questions based on an assertion of the privilege, [he] may be subject to . . . the imposition of sanctions, including a bar from the securities industry, suspension, censure, and/or fine." *Id.*

96.    As FINRA routinely investigates and charges conduct under the federal securities laws that could also give rise to potential criminal exposure, respondents to FINRA enforcement proceedings often are left with an impossible choice:  either cooperate with FINRA by providing testimony and/or documentation that may be used against them in a parallel or future criminal investigation, or refuse to cooperate with FINRA's proceedings and risk a near-certain permanent bar from the securities industry.

97.     As a state actor operating under a government mandate to enforce the federal securities laws, however, FINRA must abide by the limitations of the Constitution. Accordingly, FINRA's refusal to recognize respondents' Fifth Amendment privilege against self-incrimination in the context of an enforcement proceeding or investigation into violations of the federal securities laws is a clear violation of Plaintiff's fundamental Constitutional rights.

**E.     The DOE's Enforcement Proceeding Violates Plaintiff's Due Process Rights**

98.     The Fifth Amendment protects an individual's right against being "deprived of life, liberty, or property, without due process of law."

99.     At its core, the due process clause requires an opportunity to be heard "at a meaningful time and in a meaningful manner," *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), by a "neutral and detached" arbitrator, *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 617–18 (1993).

100.    FINRA Hearing Officers are neither neutral nor detached. Far from it: FINRA Hearing Officers—who act as both the judge and jury equipped with "nearly all the tools of federal trial judges"—are employed and compensated by the very entity that is tasked with bringing the enforcement action at hand.

101.    This inherently biased and fundamentally unfair structure infects the entire process to which Plaintiff is subject.

102.    In addition to the lack of independence of the presiding Hearing Officer, respondents in FINRA enforcement proceedings who are forced to defend themselves against charges under the federal securities laws and associated FINRA rules do not enjoy basic components of due process.

103.    In particular, pursuant to FINRA's rules, enforcement proceedings are not governed by the Federal Rules of Evidence (the "FRE") or the Federal Rules of Civil Procedure ("FRCP").

Instead, a Hearing Officer may receive any evidence that he or she believes to be relevant to the issues in the matter, including evidence that would be inadmissible in federal court under the FRE, such as hearsay.

104.    In addition, FINRA's rules deprive respondents of their right to meaningful discovery by, for example, issuing subpoenas for documents or testimony under the FRCP. Instead, pursuant to FINRA Rule 9252, the decision whether to allow respondents access to their requested discovery lies with the DOE—respondents' adversary and the party tasked with bringing the case.  And, any opposition to a decision by the DOE to block a respondent's request for discovery is decided by yet another FINRA employee, the FINRA-appointed Hearing Officer.

105.    From start to finish, the FINRA enforcement process is stacked against a respondent:  it is presided over and decided by a FINRA employee; respondent's discovery requests are determined by respondent's adversary in the action; and evidentiary rulings are subject to the nearly unfettered discretion of a paid FINRA employee.

106.    In sum, FINRA holds an enormous amount of power over the individuals it drags into its enforcement proceedings before its Hearing Officers; yet, FINRA and its Hearing Officers are not required to—and do not—abide by basic constraints and protections enshrined in the Due Process Clause of the Fifth Amendment.

### F.    If the DOE is Not a State Actor When it Acts in Furtherance of its Government Mandate to Enforce the Federal Securities Laws, then the DOE's Enforcement Proceeding Violates the Private Non-Delegation Doctrine

107.    Alternatively, if the DOE does not qualify as a state actor in connection with its enforcement authority under the federal securities laws, then the DOE's authority constitutes an unconstitutional delegation of federal law to a private entity.  The non-delegation doctrine forbids Congress from delegating regulatory authority to a private actor.  *See Ass'n of Am. R.R. v. U.S. Dep't of Transp.*, 721 F.3d 666, 670 (D.C. Cir. 2013), *vacated and remanded on other grounds*,

*U.S. Dep't of Transp. v. Ass'n of Am. R.R.*, 575 U.S. 43 (2015). Where Congress has delegated the authority to serve as "the principal decisionmaker in the use of federal power," or the power to "regulate unilaterally," such delegation violates the Constitution. *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023).

108.    The DOE acts as the principal decisionmaker in connection with its enforcement of the federal securities laws. This broad regulatory authority is not subject to SEC review until after the enforcement action is fully adjudicated and the FINRA Hearing Officer has rendered a decision. And if the FINRA Hearing Officer issues the ultimate sanction—a permanent bar from the securities industry—then this sanction goes into effect prior to review by the SEC. Indeed, even if a respondent appeals the decision to the SEC, the effectiveness of the sanction is not stayed pending that review. FINRA Rule 9730(a). This broad, unchecked enforcement power violates the non-delegation doctrine.

## A DECLARATORY JUDGMENT AND ORDER ENJOINING THE DOE'S ENFORCEMENT ACTION AGAINST PLAINTIFF IS THE ONLY REMEDY AVAILABLE TO CHECK FINRA'S POWERS

109.    As a respondent to a DOE enforcement action charging violations of the federal securities laws and associated FINRA rules, Plaintiff faces the "here-and-now" injury of being subjected to an unconstitutional procedure that holds grave consequences for his personal life and liberty, including the possibility of a permanent bar from associating with a FINRA member firm.

110.    Plaintiff is already being irreparably harmed and will continue to be irreparably harmed if the DOE is permitted to continue its enforcement proceeding against Plaintiff through its unconstitutional exercise of its enforcement authority. As the Supreme Court has made clear, "subjection to an unconstitutionally structured decisionmaking process" led by a constitutionally illegitimate decisionmaker is a "'here-and-now' injury." *Axon Enter., Inc. v. Fed. Trade Comm'n*,

143 S. Ct. 890, 904 (2023).  That is true "irrespective of [the process's] outcome, or of other decisions made within it."  *Id.*

111.    Any judicial review of the DOE's authority after the conclusion of its enforcement proceeding would come too late to adequately remedy Plaintiff's injuries.  Indeed, Plaintiff will "lose [his] rights not to undergo the complained-of proceedings if [he] cannot assert those rights until the proceedings are over."  *Axon*, 143 S. Ct. at 904.

112.    Due to FINRA's unconstitutional enforcement structure, Plaintiff and FINRA members writ large cannot exert any meaningful control over or effect any change to FINRA's enforcement process, and accordingly, Plaintiff's only remedy is to seek relief from this Court.

113.    All conditions precedent to the bringing and maintenance of this action and the granting of the relief requested have occurred, have been performed, or have been waived.

114.    On August 15, 2023, following the DOE's initiation of its enforcement action against Plaintiff, Plaintiff requested that the DOE stay the enforcement action pending the outcome in the matter of *Alpine Securities Corp. v. FINRA*, No. 23-5129 (D.C. Circ.), currently pending on appeal before the D.C. Circuit Court of Appeals.  After the DOE rejected Plaintiff's request on August 16, 2023, Plaintiff made an oral motion on August 17, 2023, as well as a written motion on August 25, 2023, with the FINRA-assigned Hearing Officer to stay the enforcement proceeding pending a decision in *Alpine*, both of which the DOE opposed.  The Hearing Officer denied Plaintiff's motion to stay on September 20, 2023.

## FIRST CLAIM FOR RELIEF
### (VIOLATION OF THE APPOINTMENTS CLAUSE)

115.    The allegations contained in the preceding Paragraphs are incorporated by reference herein.

116.    The DOE operates as a state actor subject to the constraints of the Constitution when it acts pursuant to its government mandate to enforce the federal securities laws and associated FINRA rules against its members and affiliated persons.

117.    As FINRA's Hearing Officers exercise significant executive power pursuant to the laws of the United States—akin to the powers exercised by SEC ALJs—they constitute "Officers of the United States" whose appointments must comply with the Appointments Clause of Article II of the Constitution.

118.    The Appointments Clause requires that "Officers of the United States" be appointed only by the President, a court of law, or a head of department.  *See* U.S. Const. art. II, § 2, cl. 2.

119.    As FINRA Hearing Officers are appointed by FINRA's CEO, their appointment violates the Appointments Clause.

## SECOND CLAIM FOR RELIEF
### (VIOLATION OF SEPARATION OF POWERS)

120.    The allegations contained in the preceding Paragraphs are incorporated by reference herein.

121.    The Constitution states that "[t]he executive Power shall be vested in a President of the United States" who "shall take Care that the Laws be faithfully executed."  U.S. Const. art. II, §§ 1, 3.

122.    Although the President may be assisted by inferior officers in his or her obligation to faithfully execute the federal laws, the President's ability to remove such inferior officers may not be significantly hampered.

123.    Thus, while Congress can provide for removal protection for principal officers appointed by the President, the Supreme Court has held that separate layers of removal protection

may not be combined.  That is, the President may not be restricted in his or her ability to remove a principal officer, who is in turn restricted in his or her ability to remove an inferior officer.

124.    Such dual-level protection from removal impedes the President's obligation to ensure the faithful execution of the law.

125.    FINRA's Hearing Officers and Board members may only be removed by the SEC upon a finding that the Hearing Officer or Board member violated the Exchange Act; willfully abused his or her authority; or failed to enforce compliance with the Exchange Act.

126.    And SEC Commissioners similarly may not be removed by the President at will, but only upon a finding of inefficiency, neglect of duty, or malfeasance.

127.    This dual for-cause limitation on the removal of FINRA Hearing Officers and Board members—one for the Commissioners and one for the Hearing Officers/Board members—strips the President of the power to hold his or her subordinates accountable for their conduct, and thus contravenes the Constitution's separation of powers doctrine.

## THIRD CLAIM FOR RELIEF
## (VIOLATION OF THE SEVENTH AMENDMENT RIGHT TO A JURY TRIAL)

128.     The allegations contained in the preceding Paragraphs are incorporated by reference herein.

129.    The Seventh Amendment to the Constitution states that "[i]n suits at common law … the right of trial by jury shall be preserved."

130.    FINRA asserts claims against Plaintiff for securities fraud under the Exchange Act and the Securities Act of 1933.  Fraud prosecutions were regularly brought in English courts at common law, and juries have been hearing and deciding such cases for centuries.  Accordingly, the rights that FINRA seeks to vindicate in its enforcement proceeding against Plaintiff clearly arise at common law under the Seventh Amendment.

131.    As a state actor in connection with its government mandate to enforce the federal securities laws, FINRA is required to preserve Plaintiff's right to a trial by jury in connection with its securities fraud enforcement action.  FINRA's in-house adjudicative structure—overseen by a non-neutral Hearing Officer appointed and paid by FINRA—thus violates Plaintiff's fundamental right to a jury trial enshrined in the Seventh Amendment.

**FOURTH CLAIM FOR RELIEF**
**(VIOLATION OF THE FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION)**

132.    The allegations contained in the preceding Paragraphs are incorporated by reference herein.

133.    The Fifth Amendment to the Constitution states that no person "shall be compelled in any criminal case to be a witness against himself."

134.    Because FINRA does not consider itself to be a state actor subject to the restraints of the Constitution, it does not recognize the Fifth Amendment privilege against self-incrimination in any of its proceedings.  Accordingly, if a respondent to a FINRA enforcement action exercises his or her Fifth Amendment privilege, he or she may be subject to the imposition of severe sanctions, including permanent expulsion from the securities industry.

135.    As FINRA routinely investigates and charges conduct under the federal securities laws that could also give rise to potential criminal exposure, respondents to FINRA enforcement proceedings find themselves in a Catch-22:  They must either cooperate with FINRA by providing testimony that may be used against them in a future criminal investigation or trial, or refuse to cooperate with FINRA's proceedings and risk a near-certain permanent bar from the securities industry.

136.    As a state actor operating under a government mandate to enforce the federal securities laws, FINRA's refusal to recognize a respondent's privilege against self-incrimination

in the context of an enforcement proceeding for violations of the federal securities laws is a violation of the respondent's Fifth Amendment right.

## FIFTH CLAIM FOR RELIEF
## (VIOLATION OF THE FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW)

137.    The allegations contained in the preceding Paragraphs are incorporated by reference herein.

138.    The Fifth Amendment protects an individual's right against being "deprived of life, liberty, or property, without due process of law."

139.    At its core, the due process clause requires an opportunity to be heard "at a meaningful time and in a meaningful manner" by a "neutral and detached" arbitrator.

140.    FINRA Hearing Officers—who are employed by one of the parties to the enforcement actions they are tasked with deciding—are neither neutral nor detached.

141.    In addition to the lack of independence of the presiding Hearing Officer, respondents in FINRA enforcement proceedings do not enjoy basic components of due process, including the protections of the Federal Rules of Evidence or the Federal Rules of Civil Procedure.

142.    In addition, by empowering the DOE and FINRA-employed Hearing Officers to determine whether to allow respondents to enforcement actions access to their requested discovery, FINRA's rules also deprive respondents of their right to meaningful discovery.

143.    From start to finish, the in-house tribunal construct, deliberation structure and procedural rules governing FINRA enforcement proceedings do not comport with the basic components of due process enshrined in the Fifth Amendment.

## SIXTH CLAIM FOR RELIEF
### (UNCONSTITUTIONAL DELEGATION)

144.    The allegations contained in the preceding Paragraphs are incorporated by reference herein.

145.    Article I of the Constitution states that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States."  U.S. Const. art. I, § 1.

146.    As such, it is unconstitutional for Congress to delegate regulatory authority to a private actor.

147.    The DOE acts pursuant to its government mandate to enforce the federal securities laws and associated FINRA rules when it brings enforcement proceedings against its members and affiliated persons.

148.    If the DOE is deemed not to be a state actor, but is instead a private actor, then Congress has improperly delegated significant regulatory authority to a private entity in violation of the Constitution.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court grant the following relief:

A.    An order and judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that:

ii.    FINRA is a state actor obligated to preserve the rights guaranteed under the United States Constitution when it seeks to enforce the federal securities laws and associated FINRA rules through its in-house enforcement proceedings;

iii.    FINRA's appointment of its Hearing Officers violates the Appointments Clause under Article II of the Constitution;

iv.    The removal protection afforded FINRA's Hearing Officers and Board of Governors violates the separation of powers doctrine under Article II of the Constitution; and

v.    The DOE's enforcement proceeding against Plaintiff stating claims under the federal securities laws violates Plaintiff's individual Constitutional

rights, including his Seventh Amendment right to a trial by jury, his Fifth Amendment right against self-incrimination, and his Fifth Amendment right to due process;

B.    An order and judgment enjoining FINRA from continuing its unlawful and unconstitutional enforcement proceeding against Plaintiff;

C.    Costs and attorneys' fees pursuant to any applicable statute or authority; and

D.    Such further relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a jury trial.

Dated: October 18, 2023                    Respectfully submitted,

**PERKINS COIE LLP**

By: */s/ Barak Cohen*
      Barak Cohen, Bar No. 485945
      PERKINS COIE LLP
      700 Thirteenth Street, N.W., Suite 600
      Washington, D.C. 20005-3960
      Telephone:  202.654.6204
      Facsimile:  202.654.9135

      Daniel C. Zinman (*pro hac vice* forthcoming)
      David B. Massey (*pro hac vice* forthcoming)
      Rachel S. Mechanic (*pro hac vice* forthcoming)
      Eleanor R. Shingleton (*pro hac vice* forthcoming)
      PERKINS COIE LLP
      1155 Avenue of the Americas, 22nd Floor
      New York, NY 10036-2711
      Telephone:  212.262.6900
      Facsimile:  212.977.1649

      *Attorneys for Plaintiff Sidney Lebental*